# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **MARY ANN PARKER,** a resident individual, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. _____ ) |
| **PAC ENTERPRISES, LLC,** a domestic Limited Liability Company, | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, Mary Ann Parker, by and through her counsel as undersigned, hereby files this Complaint and sues PAC Enterprises, LLC, an Alabama Limited Liability Company, for injunctive relief, attorney's fees and costs pursuant to 42 U.S.C. § 12181 *et seq.*, ("Americans with Disabilities Act" or "ADA"), and alleges:

## JURISDICTION AND PARTIES

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, (hereinafter referred to as the "ADA"). This Court is vested with original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper in this Court, the Northern District of Alabama pursuant to 28 U.S.C. § 1391(b) and Local Rules of the United States District Court for the Northern District of Alabama.

3. Plaintiff, Mary Ann Parker, (hereinafter referred to as "Parker" or "Plaintiff") is a resident of the State of Alabama and is a qualified individual with a disability under the ADA and all other applicable Federal statutes and regulations to the extent that she suffers from degenerative mobility impairments associated with complications stemming from multiple hip replacement surgeries which requires her use of a wheelchair or wheeled walker for mobility. Parker also suffers from joint pain, poor circulation and numbness causing limited use of her upper and lower extremities which further complicate her mobility impairments. Parker requires the use of a wheelchair or wheeled walker as her condition absolutely inhibits the major life activity of walking without mechanical assistance and substantially limits her in the exercise of normal bodily functions. Prior to instituting the instant action, Parker visited the premises at issue in this matter, and was denied full, safe, and equal access to the subject property due to the Defendant's lack of compliance with the ADA. Parker continues to desire and intends to visit the Defendant's premises but continues to be denied full, safe, and equal access due the barriers to access that continue to exist.

4. Defendant, PAC Enterprises, LLC, is a domestic limited liability company registered to do business in and, in fact, is conducting business in the State of Alabama. Upon information and belief, Defendant, PAC Enterprises, LLC, (hereinafter referred to as "Defendant") is the owner, lessor, lessee and/or operator of the real property and improvements that are the subject of this action, specifically the shopping center commonly referred to as "The Colonnade" located at 1225 Snow Street, Oxford, Alabama.

5. All events giving rise to this lawsuit occurred in the Northern District of Alabama.

## COUNT I – VIOLATION OF THE ADA

6. On July 26, 1990, President George H.W. Bush signed into law the Americans with Disabilities Act ("ADA"), a comprehensive civil rights law prohibiting discrimination on the basis of disability.

7. Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

8. One year after the enactment of the ADA, on July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA,

which are codified at 28 CFR Part 36.[1]

9. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.[2]

10. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

---

[1] The DOJ is the administrative agency charged by Congress with implementing the requirements of the ADA.

[2] The Access Board was established by section 502 of the Rehabilitation Act of 1973. 29 U.S.C. § 792. The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 Federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation. Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with Federal dollars under the Architectural Barriers Act of 1968. 42 U.S.C. § 4151, *et seq*. The passage of the ADA expanded the Access Board's responsibilities. The ADA requires the Access Board to "issue minimum guidelines . . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities." 42 U.S.C. § 12204. The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to Title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. § 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations. The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to Title III.

11. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

12. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

13. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

14. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements for readily achievable barrier removal in existing facilities contained in subpart C of 28 CFR part 36.304.[3]

15. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA. The place of public accommodation that the defendant owns, operates, leases or leases to which is the subject of this lawsuit is known as

---

[3] As of March 15, 2012, mandatory and complete compliance with the 2010 Standards is required of existing facilities that fail to comply with the corresponding technical and scoping specifications of the 1991 Standards.

"The Colonnade" located at 1225 Snow Street, Oxford, Alabama (hereinafter referred to as the "Shopping Center").

16.     To assist businesses in offsetting the costs associated with complying with the ADA, Section 44 of the IRS Code provides a tax credit for small businesses and Section 190 of the IRS Code provides a tax deduction for all businesses, including the Defendant. The tax credit is available to businesses that have total revenues of $1,000,000 or less in the previous tax year or 30 or fewer full-time employees. This credit can compensate $5,000 of eligible access expenditures made per year. This tax credit is made available to businesses for the express purpose of offsetting the costs of undertaking barrier removal and alterations to improve accessibility for the disabled. A tax deduction of $15,000 per year is available to all businesses and can be claimed by the Defendant for expenses incurred in barrier removal and alterations.

17.     Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) is readily achievable by the Defendant due to the low costs of removing its existing architectural barriers and the government assistance made available to Defendant pursuant to Section 190 and/or Section 44 of the IRS Code.

18.     Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying equal access to, and full, safe, and equal enjoyment of goods, services, facilities, privileges, advantages and/or

accommodations at the Shopping Center in derogation of 42 U.S.C. § 12101 *et seq.*, and as prohibited by 42 U.S.C. § 12182 *et seq.*, and by failing to remove architectural barriers where such removal is readily achievable.

19.     Plaintiff has been unable to and continues to be unable to enjoy access to, and the benefits of, the services offered at the Shopping Center owned by Defendant. Prior to the filing of this lawsuit and within the applicable statute of limitations period, Plaintiff visited the Shopping Center at issue in this lawsuit and was denied equal access to the benefits, accommodations and services of the Defendant's premises and therefore suffered an injury in fact as a result of the barriers to equal access listed in Paragraph 21, below, that she personally encountered. In addition, Plaintiff continues to desire and intends to visit the Shopping Center, but continues to be injured in that she is unable to and continues to be discriminated against due to the barriers to access that remain at the Shopping Center in violation of the ADA. Parker has now and continues to have reasonable grounds for believing that she has been and will be discriminated against because of the Defendant's continuing deliberate and knowing violations of the ADA. Due to the definiteness of her future plans to visit the subject facility, there exists a genuine threat of imminent future injury.

20.     Plaintiff resides in nearby Clay County, Alabama and frequently travels to and through the area where the subject facility is located.

21. Defendant's subject facility is in violation of 42 U.S.C. § 12181 *et seq.* and 28 CFR § 36.302 *et seq.* and is discriminating against Plaintiff as a result of *inter alia*, the following specific violations that Plaintiff personally encountered:

**Parking**

a. Where they exist, the designated accessible parking spaces do not have upright signage which cannot be blocked by a car parking in the space;

b. There are no van accessible spaces;

c. There are three (3) built up curb ramps which each extend into the access aisles serving the adjacent designated accessible spaces such that none of said parking spaces have clear and level access aisles necessary for a wheelchair user;

**Ramps and Accessible Routes**

d. The curb ramps at the facility contain excessive slopes, side slopes and/or cross slopes;

e. There are changes in levels of greater than ½ inch where the path of travel meets the curb ramps at the facility;

f. The curb ramps at the facility are otherwise not firm and/or stable;

**Access to Goods and Services**

g. There are cashier and/or service counters throughout the facility in

excess of 36 inches from the floor;

**Restrooms**

h. There are toilet rooms for public use at the facility without the required disabled use elements, in violation of several Sections of the ADAAG.

i. The entry doors to the toilet rooms have knob hardware that requires tight grasping, pinching and twisting of the wrist to operate and/or lock and unlock;

j. There are lavatories in the toilet rooms at the facility with no clear floor space beneath them such that a wheelchair user cannot utilize the sink;

k. There are mirrors in the public toilet rooms at the facility that are too high;

l. There are paper towel dispensers in the public toilet rooms at the facility that are too high for wheelchair users to reach;

22. There are other current barriers to equal access and violations of the ADA at the Shopping Center owned and controlled by Defendant that were not specifically identified herein as Plaintiff is not required to engage in a futile gesture pursuant to 28 CFR Part 36, § 36.501 and, as such, only after a full inspection is performed by Plaintiff or Plaintiff's representatives can all said violations be identified.

23. The barriers to equal access described herein constitute substantial and

pervasive discriminatory barriers to equal access which seriously affect the civil rights of individuals with disabilities, including Plaintiff's. To date, these barriers to access and other violations of the ADA still exist at the subject facility and have not been remedied in such a way as to effectuate compliance with the provisions of the ADA.

24. Pursuant to the ADA, 42 U.S.C. § 12101 *et seq.*, 28 CFR § 36.304 and/or § 36.401, Defendant was required to remediate the subject facility, a place of public accommodation, to be accessible to persons with disabilities. To date, Defendant has failed to comply with this mandate. [4]

25. Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have her reasonable attorneys' fees, costs and expenses paid by Defendant, pursuant to 42 U.S.C. § 12205.

26. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff injunctive relief; including an Order to alter the subject facilities to make them readily accessible to, and useable by, individuals with disabilities to the

---

[4] The classification of facilities as "new construction", "alterations", or "existing facilities" under the ADA is neither static nor mutually exclusive. For the purposes of establishing a continuing obligation for barrier removal, newly constructed or altered facilities are also existing facilities. As such, a newly constructed facility is not only subject to the accessibility standards in effect at the time of design and construction, but also after construction, this same facility is *also* an existing facility. Therefore, in addition to the new construction requirements, a public accommodation has a continuing obligation to remove barriers that are deemed barriers, even after construction. Such barriers include but are not limited to the elements that are first covered in the 2010 Standards.

extent required by the ADA and closing the subject facilities until the requisite modifications are completed.

**WHEREFORE**, the Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

A. That the Court declare that the subject property owned and administered by Defendant is violative of the ADA;

B. That the Court enter an Order directing Defendant to alter its facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

C. That the Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures toward persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

D. That the Court award reasonable attorneys' fees, costs (including expert fees) and other expenses of suit, to Plaintiff;

E. That the Court award interest upon the original sums of said award of attorney's fees, costs (including expert fees), and other expenses of suit; and

F. That the Court award such other and further relief as it deems necessary, just and proper.

Dated this the 10th day of November 2017.

                              Respectfully submitted,

                      By: __/s/ John Allen Fulmer II_____
                            John Allen Fulmer II, Esq.
                            Alabama State Bar No.: ASB-1089-O42F

**Of Counsel:**
**FULMER LAW FIRM, P.C.**
PO Box 130373
Birmingham, AL 35213
Telephone: (205) 402-2100
Email: jaf@jafulmerlaw.com